# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMETEK CTS US, Inc. and AMETEK CTS GmbH,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Advanced Test Equipment Corp.,<br><br>　　　　　　　　　Defendant. | Case No.: 19-cv-02348-H-AHG<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND A TEMPORARY RESTRAINING ORDER**<br><br>[Doc. No. 10.] |

On December 9, 2019, Plaintiffs AMETEK CTS US, Inc. and AMETEK CTS GmbH ("Plaintiffs" or "AMETEK") filed a complaint alleging violations of the Lanham Act among other state law causes of action. (Doc. No. 1.) Presently before the Court is Plaintiffs' Motion for Preliminary Injunction filed December 9, 2019. (Doc. No. 2.) The Court held a telephonic hearing on the Motion for a Temporary Restraining Order on December 18, 2019 at 10:30 am. Jason White along with other representatives, appeared for the Plaintiffs. John M. Billy made a special appearance to request a continuance so that ATEC could obtain counsel for the corporation. James P. Berg and Jamison Berg, nonlawyer representatives for ATEC, also were telephonically present for the hearing. At the hearing Mr. Berg represented to the Court that "the press release with the allegedly false statements at issue in the complaint had been taken down from ATEC's website and that ATEC would not disseminate similar statements." (Doc. No. 19 at 2.) The Court

granted Defendant's request for a continuance and continued the hearing on the Motion for a Preliminary Injunction and Temporary Restraining Order to January 10, 2020 at 11am. On January 6, 2020, Defendant opposed the motion. (Doc. No. 20.) On January 9, 2020, Plaintiffs replied. (Doc. No. 21.) The Court held a hearing on the motion on January 10, 2020. Jacon C. White appeared for Plaintiffs and Jacob T. Spaid appeared for the Defendant. For the following reasons the Court denies the motion for a preliminary injunction and temporary restraining order without prejudice.

## **Background**

Plaintiffs AMETEK CTS US, Inc. and AMETEK CTS GmbH (collectively, "AMETEK") seek a preliminary injunction and a temporary restraining order against Defendant Advanced Test Equipment Corp. ("ATEC").[1]

AMETEK is a manufacturer of sophisticated electronic instruments in the automotive, telecommunications, energy, aerospace, power, research, medical and industrial markets. (Doc. No. 2, Ex. 2. ¶ 1.) AMETEK sells directly to consumers and also distributes its products through commercial partners. (Id. ¶ 4.) Defendant ATEC has been a distributor of AMETEK's products. (Id.) Specifically ATEC has been a purchaser of AMETEK's TESTEQ, IFI, Milmega and EM Test lines of products for use in rental pools. Id. AMETEK and ATEC have been doing business in this manner for nearly 15 years with approximately $17 million in sales between the two companies. (Doc No. 20-4 at 2.)

On September 7, 2019, AMETEK informed ATEC that it would have to "decline the opportunity for non-warranty service requests on behalf of ATEC going forward." (Doc. No. 2, Ex. 3.) Defendant responded negatively to this development. (Id. at 4.) In a September 17, 2019 email, Jim Berg, CEO of ATEC, wrote that it "is very clear that Ametek is no longer going to support the many millions of dollars of equipment that ATEC has purchased from them over the years." (Id.) The same day, Rick Powell, Director of

---

[1] Since the standard for a Temporary Restraining Order ("TRO") is nearly identical to a Preliminary Injunction the Court does not address the TRO separately. Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Sales for the Americas, wrote back to Mr. Berg, informing him that AMETEK would "continue to repair anything that is still under warranty." (Id.)

On December 4, 2019, Defendant issued a press release titled "AMETEK CTS No Longer Calibrating or Repairing Equipment After The Warranty Expires." (Id. at Ex. 1.) This press release was also simultaneously disseminated over ATEC's LinkedIn, Facebook, and Twitter accounts as well as Defendant's website and through email. (Id.) The body of the press release stated that "AMETEK CTS has notified them [ATEC] that they would no longer be supporting their products after the warranty period has expired." (Id.) Following the issuance of this press release, AMETEK began to receive inquiries from its various customers and distributors about whether AMETEK would continue to support its products after the end of their warranty. (Doc. Nos. 10. Ex.7, 8, and 12.)

On December 4, 2019, AMETEK, through its counsel, sent a letter to Mr. Berg demanding that "ATEC immediately remove the press release from its website, as well as all other locations . . . ." (Id. Ex. 17.) Two days later, on December 6, 2019, Mr. Berg responded indicating that ATEC would deliver "an appropriate response to your request" within 10 business days. (Id. Ex. 18.) On December 9, 2019, ATEC offered to publish a retraction, prepared by AMETEK, of the press release. (Doc. No. 20 at 3.) Instead, later that same day, December 9, 2019, AMETEK filed their complaint with this Court. (Doc. No. 1.)

On December 18, 2019 the Court held a telephonic hearing on the motion for a Temporary Restraining Order. At the hearing Mr. Berg represented to the Court that "the press release with the allegedly false statements at issue in the complaint had been taken down from ATEC's website and that ATEC would not disseminate similar statements" during the course of this litigation. (Doc. No. 19 at 2.)

### Discussion

I. Legal Standard

A preliminary injunction is "an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008); see Earth Island Inst. v.

Carlton, 626 F.3d 462, 469 (9th Cir. 2010) ("[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this 'extraordinary remedy.'") (quoting Winter, 555 U.S. at 24). It is "a device for preserving the status quo and preventing the irreparable loss of rights before judgment." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). "The grant or denial of a motion for a preliminary injunction lies within the discretion of the district court." Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1429 (9th Cir. 1995).

In Winter, the Supreme Court held that a plaintiff seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter, 555 U.S. at 20. The Ninth Circuit balances these "Winter factors" using a "sliding scale" approach, where "a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). However, Winter "requires the plaintiff to make a showing on all four prongs." Id. at 1135.

**II. Analysis**

    **a. Irreparable Harm**

A party seeking a preliminary injunction must establish that he is likely to suffer irreparable harm. Winter, 555 U.S. at 20. The mere "possibility" of irreparable harm is not sufficient to justify a preliminary injunction. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation." Idaho v. Coeur d'Alene Tribe, 794 F.3d 1039, 1046 (9th Cir. 2015); see also Los Angeles Memorial Coliseum Comm'n v. NFL, 634 F2d 1197, 1202 (9th Cir. 1980) (denying a preliminary injunction because lost revenues, diminution of property value and loss of substantial goodwill are all monetary damages that can be remedied by a damages award). Although loss of goodwill may constitute irreparable injury, the loss must be based on factual allegations and not be purely speculative. Goldie's Bookstore, Inc. v. Superior Court of

State of Cal., 739 F.2d 466, 472 (9th Cir. 1984); see also Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."); Adidas America, Inc. v. Sketchers USA, Inc. 890 F.3d 747, 756 (9th Cir. 2018) (damage to good will "can constitute irreparable harm so long as there is *concrete* evidence in the record of those things.") (internal citations omitted) (emphasis added).

Plaintiffs contend that, absent a preliminary injunction, they will suffer irreparable harm as a result of Defendant's misleading press release. (Doc. No. 10-1 at 15-17.) Plaintiffs argue that Defendant's allegedly false statements strike "at [a] key building block upon which AMETEK's reputation relies." (Id.) AMETEK contends that this loss of control over how their company is perceived in the marketplace constitutes an irreparable harm. (Id.)

Defendant contends that Plaintiffs have not actually established any harm to their goodwill or loss of control and that the potential loss of future sales cannot constitute an irreparable injury. (Doc. No. 20 at 12-13.)[2]

Ultimately, the emails offered as evidence by Plaintiffs show, at most, that some consumers were confused by ATEC's press release. However, the Ninth Circuit has explained that customer confusion is not the same thing as irreparable harm. Herb Reed Enterprises, 736 F.3d at 1250 ("This evidence, however, simply underscores customer confusion, not irreparable harm.") None of the customers, in the emails provided by Plaintiffs, state that they now have a negative impression of Plaintiffs business or that they would refuse to use Plaintiffs' services in the future. (See Doc. Nos. 10-1--10-19, 16-1--

---

[2] Defendant also argues that the motion is moot since the offending statements have been unpublished. (Doc. No. 20 at 5.) However, a defendant "cannot automatically moot a case simply by ending its unlawful conduct once sued." Already, LLC v. Nike, Inc., 568 U.S. 85 (2013). Rather, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 190 (2000). Since Defendant makes no argument that its behavior "could not reasonably be expected to recur," the Court has no basis to consider the case moot.

16-8.) The emails provided by Plaintiffs are not like the complaints that supported the Ninth's Circuit finding of irreparable harm in Life Alert Emergency Response, Inc. v. LifeWatch, Inc. 601 F. App'x 469, 473–74 (9th Cir. 2015) (sufficient evidence of irreparable injury where employee submitted "declaration reporting numerous and persistent complaints from would-be customers"). In that case Plaintiff provided direct evidence of consumers complaining about their products as a result of the disputed conduct. Id. Here there is no analogous evidence in the record. Plaintiffs have not provided enough concrete evidence in the record to justify the extraordinary remedy of injunctive relief at this time.

Plaintiffs have also offered two declarations from Mr. Huntsman, a Vice President at AMETEK CTS GmbH. (See Doc. Nos. 10-2, 16.) Mr. Huntsman asserts that "AMETEK's reputation in the marketplace has been harmed by ATEC's false statements" and that "AMETEK expects to lose future sales" as result of ATEC's conduct. (Doc. No. 10-2 at 34.) But Mr. Huntsman's assertions are conclusory and cannot support a finding of irreparable harm. See Am. Passage Media Corp. v. Cass Commc'ns, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985) (no showing of irreparable harm where declarations from the plaintiff's own executives were "conclusory and without sufficient support in facts" and "[n]one of the advertisers say[] that [they] will discontinue business with [plaintiff]"). Mr. Huntsman's conclusory declarations do not provide the concrete evidence necessary to support a finding of irreparable harm.

**b. Likelihood of Success on the Merits**

The court will now also address the likelihood of Plaintiffs success on the merits. Plaintiffs bring six causes of action against Defendant: (1) false advertising under § 43(a) of the Lanham Act, (2) a violation of California Business and Professions Code § 17500, (3) a violation of California Business and Professions Code § 17200, (4) a claim for intentional interference with prospective economic advantage, (5) a claim for negligence interference with prospective economic advantage, (6) and a claim for trade libel. (Doc. No. 1 ¶34-76.) However, Plaintiffs' Motion for a Preliminary Injunction only addresses the

likelihood of Plaintiffs' success on their false advertising claim. The Court will therefore only consider Plaintiffs' likelihood of success on the merits of their false advertising claim.

*False Advertising*

To prove a claim for false advertising under the Lanham Act, Plaintiffs must establish:

> 1) in advertisements, defendant made false statements of fact about its own or another's product;
>
> 2) those advertisements actually deceived or have the tendency to deceive substantial segment of their audience;
>
> 3) such deception is material, in that it is likely to influence the purchasing decision;
>
> 4) defendant caused its falsely advertised goods to enter interstate commerce; and
>
> 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the goodwill which its products enjoy with the buying public.

CKE Rest. v. Jack in the Box, Inc., 494 F. Supp. 2d 1139, 1142–43 (C.D. Cal. 2007) (citing Rice v. Fox Broad. Co., 330 F. 3d 1170, 1180 (9th Cir. 2003).

Plaintiffs argue that Defendant has made literally false statements about the scope of AMETEK's post-service warranty therefore satisfying the first prong of the test. (Doc. No. 10-1 at 10-11.) Plaintiffs point to the title of the press release issued on December 4, 2019 which reads: "AMETEK CTS No Longer Calibrating Or Repairing Equipment After The Warranty Expires." (Id.) AMETEK argues that this is a false statement because this implies that AMETEK is no longer calibrating or repairing equipment after the warranty for any purchaser. (Doc. No. 10-1 at 10-11.) Plaintiffs also take issue with the body of the press release which states in part that "AMETEK CTS has notified them [ATEC] that they would no longer be supporting their products after the warranty period has expired." (Id.) Plaintiffs argue that these statements "convey the message that AMETEK no longer supports any of its TESEQ, IFI, and EM Test products for any of its customers" when in

fact AMETEK is still supporting these product lines after warranty as long as the relevant machines were not purchased by ATEC. (Id.)

Defendant opposes stating that the contested statements are true in the context of the entire press release. (Doc. No. 10-2 at 2.) ATEC argues that it is true that AMETEK had reached out to the Defendant to notify them that they would "decline the opportunity for non-warranty service request on behalf of ATEC going forward." (Doc. No. 10-2 at 2.)

To demonstrate falsity, "a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997.) The parties' moving papers and arguments during the hearing reveal numerous disputes of fact that preclude the Court from determining that the Plaintiff is likely to prevail on the merits of a Lanham Act false advertising claim at this stage. Both parties raise reasonable arguments about the the contested statements. Plaintiffs' argument that the subject line of the press release is misleading is not without merit but Defendant's contention that the subject line must be read in context with the body of the release is also compelling. In deciding a motion for a preliminary injunction, the district court is not bound to decide doubtful and difficult questions of law or disputed questions of fact." Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 551 (9th Cir.1986) (internal citations omitted). The question of whether a consumer reading this press release would have been misled or confused is at this point a contested factual question. Accordingly, the Court declines to resolve these factual disputes on such a limited record and finds Plaintiff have not carried their burden of demonstrating a likelihood of success on the merits at this stage.

Since Plaintiffs have failed to demonstrate irreparable harm or a likelihood of success on the merits, the Court need not address Defendant's remaining arguments or the remaining factors necessary for injunctive relief. See Amylin Pharm., Inc. v. Eli Lilly & Co., 456 F. App'x 676, 679 (9th Cir. 2011).

8

19-cv-02348-H-AHG

**Conclusion**

In sum, Plaintiffs have failed to establish a likelihood of success on the merits or a likelihood of irreparable harm. Accordingly, Plaintiffs have failed to establish entitlement to a preliminary injunction, and the Court denies Plaintiffs motion for a preliminary injunction and temporary restraining order. See <u>Winter</u> 555 U.S. at 20.

**IT IS SO ORDERED.**

DATED: January 13, 2020

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT